Brett L. Gibbs, Esq. (SBN 251000)
Steele Hansmeier PLLC.
38 Miller Avenue, #263
Mill Valley, CA 94941
415-325-5900
blgibbs@wefightpiracy.com

*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| AF HOLDINGS LLC, ) | No. C-11-03336 LHK |
| ) | |
| Plaintiff, ) | **PLAINTIFF'S OMNIBUS RESPONSE TO** |
| v. ) | **MOVANT'S MOTION TO QUASH** |
| ) | **OR MODIFY SUBPOENA AND TO** |
| DOES 1-135, ) | **PROCEED ANONYMOUSLY** |
| ) | |
| Defendants. ) | |
| ) | |

An anonymous individual ("Movant") filed a motion to quash an outstanding subpoena issued to Movant's ISP. (Motion to Quash or Modify Subpoena, September 22, ECF No. 14 [hereinafter "Motion to Quash"].) Movant argues that the subpoena should be quashed because defendants were improperly joined in this case. (*Id.*) Movant also filed a motion to proceed anonymously in this case. (Motion of John Does [sic] IP# 98.234.115.111 to Proceed Anonymously, September 22, 2011, ECF No. 14 [hereinafter "Motion to Proceed Anonymously"].) Movant argues that he should be allowed to proceed anonymously because of embarrassing nature of this lawsuit. (*Id.*)

**ARGUMENT**

This brief consists of five parts: Part I sets forth the legal standard for joinder. Part II argues that joinder is proper at this early stage of litigation. Part III argues that the exclusive remedy for misjoinder is severance, and not the quashing of a subpoena. Part IV argues that Movant should not

be allowed to proceed anonymously in this case. Part V argues that Movant has not provided the Court with enough information to determine whether it has the statutory authority to grant Movant's motion to quash.

## I. LEGAL STANDARD FOR JOINDER

Rule 20(a)(2) of the Federal Rules of Civil Procedure ("FRCP") permits the joinder of defendants in one action if: 1) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and 2) any question of law or fact common to all defendants will arise in the action. Fed. R. Civ. P. 20(a)(2).

Claims arise out of the "same transaction or occurrence" if they share similar factual backgrounds. *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997). Claims possess sufficient factual similarity if they "arise out of a systematic pattern of events." *Bautista v. Los Angeles County*, 216 F.3d 837, 842-43 (citations omitted). To aid in their application of the "transaction or occurrence test," courts look to how the test is applied in other provisions of the Federal Rules, such as Rule 13(a). *Mosley v. General Motors Corporation*, 497 F.2d 1330, 1332-33 (8th Cir. 1974). The Supreme Court states that the meaning of "transaction", as used in Rule 13(a), "may comprehend a series of many occurrences, depending not so much upon the immediateness of their own connection as upon their logical relationship." *Moore v. New York Cotton Exchange*, 270 U.S. 593, 610 (1926). Accordingly, "Rule 20 would permit all reasonably related claims by or against different parties to be tried in a single proceeding. Absolute identity of all events is unnecessary." *Mosley*, 497 F.2d at 1333. The second prong of Rule 20(b) is satisfied if "some question of law or fact common to all the parties will arise in the action." *League to Save Lake Tahoe v. Tahoe Reg. Plan. Agcy.*, 558 F.2d 914 (9th Cir. 1977) (citing Wright & Miller, *Federal Practice and Procedure*: Civil § 1653).

After evaluating the Rule 20(a)(2) requirements, "a district court must examine whether permissive joinder would 'comport with the principles of fundamental fairness' or would result in prejudice to either side." *Coleman v. Quaker Oats Company*, 232 F.3d 1271, 1296 (9th Cir. 2000)

(citing *Desert Empire Bank v. Insurance Co. of North America*, 623 F.2d 1371, 1375 (9th Cir. 1980)).

In deciding whether to allow joinder at a particular stage of the litigation, the joinder rules are "to be construed liberally in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits." *Save Lake Tahoe v. Tahoe Reg'l Planning Agency*, 558 F.2d 914, 917 (9th Cir. 1977). "Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Works of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). The purpose of the joinder rules is, *inter alia*, to "avoid multiplicity of suits." *Stanley Works v. Haeger Potteries, Inc.*, 35 F.R.D. 551, 554 (N.D. Ill. 1964).

## II.   JOINDER IS PROPER AT THIS EARLY STAGE OF THE LITIGATION

Joinder is proper at the early discovery stage of this litigation. First, Plaintiff's allegations plainly satisfy the Rule 20(a)(2) requirements for joinder. Second, joinder at the early discovery stage of the litigation promotes principles of fundamental fairness. Finally, severance at this stage of the litigation—where the identities of the doe defendant(s) are unknown—would separate an essentially unitary problem.

### 1.   Plaintiff's Allegations Plainly Satisfy the Rule 20(a)(2) Requirements for Joinder

Plaintiff's allegations satisfy the Rule 20(a)(2) requirements for joinder. *MCGIP, LLC v. Does 1–18*, No. 11-1495, 2011 WL 2181620, at *1 (N.D. Cal. June 2, 2011) (Chen, J.) (citing *Voltage Pictures, LLC v. Does 1–5,000*, No. 10-0873, 2011 WL 1807438, at *4 (D.D.C. May 12, 2011)) (finding comparable pleadings "proper" for permissive joinder at the early discovery stage of the litigation).

First, the Complaint alleges that all Doe Defendant(s) were part of a common scheme. For example, the Complaint asserts that "[i]n using the P2P BitTorrent file distribution method, each Doe Defendant participated in, aided in, attempted to aid in, or at least knew of the formation and operation of a common-plan conspiracy to unlawfully and distribute Plaintiff's Work by exchanging pieces of the Work file in a torrent swarm on BitTorrent." (Compl. ¶ 33; *see also id.* ¶ 5.) *See also*

*Mosley*, 497 F.2d at 1333-34 (reversing district court's severance of plaintiffs where defendant was alleged to have engaged in a common scheme of discriminatory conduct). Second, the Complaint alleges that the Doe Defendant(s) used the BitTorrent protocol to distribute Plaintiff's works amongst themselves—which by virtue of the nature of the BitTorrent protocol necessarily involves collaboration among the Does Defendant(s). (Compl. ¶¶ 1, 5, 8-11, 15, 23, 26-28, 33-38.) *See also, e.g., Patrick Collins, Inc. v. Does 1-2,590*, No. C 11-02766 MEJ, 2011 WL 3740487 *6 (N.D. Cal. Aug. 24, 2011) ("[T]he Court finds that Plaintiff has at least presented a reasonable basis to argue that the BitTorrent protocol functions in such a way that peers in a single swarm downloading or uploading a piece of the same seed file may fall within the definition of "same transaction, occurrence, or series of transactions or occurrences" for purposes of Rule 20(a)(1(A)). Finally, Plaintiff asserted a right to relief against the Doe Defendant(s) jointly and severally for the Doe Defendant(s)' active participation in a civil conspiracy and the associated infringement damage. (Compl. ¶¶ 32-39.) Such allegations have been held sufficient to sustain joinder while discovery of Doe Defendant(s)' identities is underway. *MCGIP, LLC*, 2011 WL 2181620, at *4 (Chen, J.) (holding such allegations were sufficient at the early stage of litigation and postponing further joinder discussion until movants were made party to the litigation); *Voltage Pictures*, 2011 WL 1807438, at *4 (same); *Call of the Wild Movie v. Does 1–1,062*, No. 10-455, 2011 WL 996786, at *4–5 (D.D.C. Mar. 22, 2011) (finding plaintiffs' allegations that the Doe defendant(s) used BitTorrent, BitTorrent "makes every downloader also an uploader," and any peer who has completed a download "is automatically a source for the subsequent peer" to be sufficient to make claims against defendant(s) "logically related"); *First Time Videos, LLC v. Does 1-500*, no. 10 C 5254, 2011 WL 3498227, at *11 (N.D. Ill. Aug. 9, 2011) (same); *Hard Drive Productions, Inc. v. John Does 1-44*, 11 C 2828 (N.D. Ill. Aug. 9, 2011) (Holderman, C.J.).

As to the second prong of 20(a)(2), this suit involves questions of law and fact that are common to all defendant(s). Plaintiff's Complaint singles out several legal questions underlying the claims against each defendant. (Compl. ¶ 5.) Further, this suit involves common questions of fact. By way of example, the methods used "to investigate, uncover, and collect evidence about any

infringing activity will be the same as to each Doe Defendant." *First Time Videos*, 2011 WL 3498227, at *2.

### 2. Joinder at the Early Discovery Stage of the Litigation Promotes Principles of Fundamental Fairness

Under the Federal Rules, "the impulse is towards entertaining the broadest possible scope of action consistent with fairness to the parties." *United Mine Workers*, 383 U.S. at 724. Joinder is strongly encouraged because it promotes judicial economy. It inherently allows parties to join, *inter alia*, related parties and have common issues of law and fact decided for all of the parties in a single decision. The benefit of judicial economy gives way—even when the requirements of Rule 20 are met—when joinder violates principles of fundamental fairness. *Coleman*, 232 F.3d at 1296 (9th Cir. 2000) (internal citation omitted). At this stage of the litigation—where Plaintiff is simply seeking the identities of individuals associated with IP addresses associated with unlawful copyright infringement—joinder is not only consistent with principles of fundamental fairness, but actually promotes the same. *First Time Videos*, 2011 WL 3498227, at *11 ("[J]oinder at this stage is consistent with fairness to the parties and in the interest of convenience and judicial economy because joinder will secure the just, speedy, and inexpensive conclusion for both FTV and any future named defendant(s) … [Severance would] make it highly unlikely that FTV could protect its copyrights in a cost-effective manner.").

A pair of motions brought in a similar case provides a classic illustration of why joinder at this stage of the litigation promotes fundamental fairness. In that case, two motions were brought on behalf of two different IP addresses, but both motions and IP addresses actually belonged to the same individual. *Hard Drive Productions, Inc., v. Does 1-69*, C-11-03004, (N.D. Cal. Aug. 25, 2011), ECF Nos. 12-13. Even though those two motions were brought on behalf of two different IP addresses, both motions and IP addresses actually belonged to a single individual. *Id.* It would be unfair and inefficient to sever an identical claim brought against a single individual. Multiple IP addresses (and thus multiple alleged doe defendant(s)) are frequently associated with a single individual. This happens when an individual's modem is reset. Each time it is reset, the individual

subscriber is assigned a different IP address. If, for instance, the individual is in the swarm containing the unique file with Plaintiff's video, and resets his Comcast modem, he will still remain in the same swarm with the same unique file, but he will simply appear with a new IP address. At this point in the litigation—i.e. before the requested discovery is granted—Plaintiff does not know which Doe Defendant(s) in this case have multiple IP addresses listed on Exhibit A of the Complaint (Compl. at 13-15.)

By way of another example, in a case filed by Plaintiff's counsel in the Northern District of Illinois against 28 doe defendant(s), *each* IP address was, in fact, associated with the *same* individual. (Decl. of John Steele ¶ 4, Exhibit A to this Application.) Had the court there severed the case before the plaintiff had completed early discovery, Plaintiff would have unwittingly filed *28 separate* copyright infringement actions against the *same* anonymous individual. This would have entailed *28* separate filing fees, complaints, civil cover sheets, attorney appearance forms, corporate disclosure statements, motions for expedited discovery, memoranda of law in support thereof, declarations, proposed orders, motion hearings and subpoenas. The responding doe defendant would have received *28* separate ISP notification letters, would have had to file *28* separate motions to quash and answer *28* separate complaints—lest he be subject to a default judgment. Additionally, the actions could have been before nearly all of the judges in the Eastern Division of the Northern District of Illinois and would almost certainly have received some level of inconsistent treatment. No plausible argument can be made that severance would have been appropriate in this real world example. The same is true here.

Just as personal jurisdiction analysis is premature when the Court does not know a defendant's identity—and thus does not know whose contacts to evaluate—so too is it premature at the identification stage of litigation to sever unidentified parties from litigation. Without knowing whom the parties are (i.e., whether a given individual is associated with some or all of the IP addresses in a complaint), a court cannot know whether it is severing identical claims against the same individual. Moreover, the unfortunate individual who is severed multiple times from the same action as a result of premature severance would face multiple claims, multiple lawsuits and a much

higher overall litigation burden than would have occurred had a court deferred the severance question merely until the plaintiff received identifying information from the ISP(s).

Judge Howell of the United States District Court for the District of Columbia presciently anticipated the multiple IP address-to-individual scenario outlined above. Judge Howell reasoned that severance would be especially contrary to the interests of any individuals who have been named as Doe Defendant(s) multiple times in the same suit for multiple observed instances of infringing activity, a possibility that is a consequence of the dynamic reassignment of many consumer IP addresses:

> [S]ome IP addresses may relate to the same person, who is engaged in the allegedly infringing activity claimed by plaintiffs. Severance of the putative defendant(s) associated with different IP addresses may subject the same [ISP] customer to multiple suits for different instances of allegedly infringing activity and, thus, would not be in the interests of the putative defendant(s).

*Call of the Wild Movie*, 2011 WL 996786, at *6.

It is worth noting that small business copyright holders, such as Plaintiff, would have literally no realistic means of economically enforcing their copyrights against digital infringement if misjoinder decisions forced them into a judicially-imposed game of Russian Roulette (i.e. being required to pay separate filing fees and hoping that the IP addresses pursued are not associated with the same underlying individual). *First Time Videos, LLC v. Does 1-500*, No. 10-cv-6254, at *20 (N.D. Ill. Aug. 9, 2011) (Castillo, J.), ECF No. 151. (Finding that the plaintiff would be prejudiced if severance were granted because the expense of litigation would be too great a hindrance on its ability to protect its legal rights). It is also worth noting that settling infringers are much more likely to be able to escape liability with a modest settlement when Plaintiff's initial litigation costs (due to multiple filing fees and attorney time) are isolated to a single case because Plaintiff, at that point, is not only looking to recoup costs, but also to go to trial head up against the remaining doe defendant.

Finally, Plaintiff observes that Rule 21 safeguards the Court from an unreasonable burden on its own docket. Rule 21 vests the Court with the discretion to sever this action at any time. Certain of the Court's esteemed colleagues were concerned about the litigation logistics that would result from

multiple parties defending a copyright action at once. These concerns might have merit at a later stage of the litigation, but the power of *sua sponte* severance makes predicting the future unnecessary. The Court need only be concerned with the immediate-term because it retains the authority to immediately sever an action, if necessary.

All of the foregoing considerations reveal the wisdom and reasoning behind why the overwhelming majority of federal courts elect to defer the joinder question until the identities of the individuals associated with the IP addresses have been ascertained. At this point in the litigation— i.e. before the requested discovery is granted—Plaintiff does not know which Doe Defendant(s) in this case have multiple IP addresses listed on Exhibit A of the Complaint (Compl. at 13-15.) Should the Court decide to sever the case at this point, it would be prejudicing, and putting a heavy burden upon, Plaintiff, Doe Defendant(s), and the Court system as a whole.

**3. Severance at this Stage of the Litigation Would Separate an Essentially Unitary Problem**

While joinder rules are ultimately discretionary in nature, this discretion is not without limit. According to the Second Circuit, "an attempt to separate an *essentially unitary problem* is an *abuse of discretion*." *Spencer, White & Prentis, Inc. v. Pfizer, Inc.*, 498 F.2d 358, 362 (2d Cir. 1974) (emphasis added); *see also Leslie*, 2010 WL 2991038 at *4 (citing the abuse of discretion standard set forth in *Spencer, White & Prentis, Inc.*); *Zaldana v. KB Home, et al.*, C 08-3399, 2010 WL 4313777 at *1 (N.D. Cal. Oct. 26, 2010) (Chesney, J.). Should the Court choose to sever this case, its *sua sponte* actions could have repercussions. Considering it is likely that the same individual had multiple IP addresses involved in the alleged infringement in this case, the Court would be severing an identical claim against an identical individual. As the Court understands, the Court would then be severing a case with the purest imaginable form of a "unitary problem." Should the Court choose this course, such a decision could end in reversible error of an otherwise discretionary power.

At this juncture, the proper course would be to wait to rule on the issue of joinder until Plaintiff has Doe Defendant(s)' identities, and can further, if necessary, discover information physically linking unlawfully downloaded files containing Plaintiff's copyrighted Works on Doe

Defendant(s)' computers. Plaintiff's agents have the technology necessary to identify whether files on one computer match those of another, thereby can prove that those individuals were passing back and forth bits and pieces of files to each other through the same swarm via BitTorrent. At this early stage, however, there is no way to identify that information linkage when Plaintiff has not even been granted the ability to proceed with its initial discovery of Doe Defendant(s)' identities.

### III. THE EXCLUSIVE REMEDY FOR MISJOINDER IS SEVERANCE, NOT THE QUASHING OF A SUBPOENA

Movant asks the Court to quash the subpoenas in this case on the grounds of misjoinder, but he does not explain how misjoinder is a grounds for quashing the subpoenas. Fed. R. Civ. P. 21 vests courts with the power to sever cases, but it does not vest courts with the power to quash subpoenas. Instead, this power—and its limits—are set forth in Fed. R. Civ. P. 45.

Movant's only allowable basis for quashing this subpoena is if it "requires disclosure of privileged or other protected matter, if no exception or waiver applies." *Id.* 45(c)(3)(A)(iii). No other 45(c)(3) grounds apply here: this subpoena does not require travel, it does not involve trade secrets or disclosure of an unretained expert's opinion, and undue burden or time for compliance objections properly lie with the subpoenaed party. Fed. R. Civ. P. 45(c)(3); *Kessel v. Cook County*, No. 00 C 3980, 2002 WL 398506, at *2 (N.D. Ill. Mar. 14, 2002) (undue burden or inconvenience objections properly lie with the subpoenaed party, and not with the objectors). And, if Movant is making a claim of privilege or protection, then he must make this claim expressly and describe the nature of the information he seeks to have withheld. Fed. R. Civ. P. 45(d)(2)(A).

Courts have held that Internet subscribers do not have an expectation of privacy in their subscriber information, as they have already conveyed such information to their Internet Service Providers. *See, e.g.*, *Guest v. Leis*, 255 F.3d 325, 335–36 (6th Cir. 2001); *United States v. Hambrick*, Civ. No. 99-4793, 2000 WL 1062039, at *4 (4th Cir. Aug. 3, 2000); *United States v. Kennedy*, 81 F. Supp. 2d 1103, 1110 (D. Kan. 2000). As one court reasoned, "if an individual subscriber opens his computer to permit others, through peer-to-peer file-sharing, to download materials from that computer, it is hard to understand just what privacy expectation he or she has after essentially

1  opening the computer to the world." *In re Verizon Internet Services, Inc.*, 257 F. Supp. 2d 244, 267
2  (D.D.C. 2003), *rev'd on other grounds*, 351 F.3d 1229 (D.C. Cir. 2003); *See also MCGIP, LLC v.*
3  *Does 1-18,* No. C-11-1495, 2011 WL 2181620 at *1 (N.D. Cal. June 2, 2011); *UMG Recordings,*
4  *Inc. v. Does 1–4,* No. 06-0652, 2006 WL 1343597, at *2 (N.D. Cal. Mar. 6, 2006) ("[T]he
5  defendants diminished any expectation of privacy they may have had by opening their computer to
6  others through pee-to-peer file sharing.")

7        The mere severance of a party (or parties) from this case at the early discovery stage does not
8  reduce the relevance of the information sought in the subpoenas. In particular, the information
9  sought will allow Plaintiff to identify the remaining defendant's potential co-conspirators, will allow
10 Plaintiff to more accurately catalog the extent of harm caused by the remaining defendant's
11 infringement and will allow Plaintiff to determine whether any of the severed IP addresses are
12 actually associated with the remaining defendant.

13       Plaintiff has already demonstrated and this Court agreed that it has "good cause" for seeking
14 the information sought in the subpoenas. The good cause analysis does not change simply because
15 certain doe defendants are severed from the litigation. As described in Plaintiff's original *ex parte*
16 application, Plaintiff has good cause for seeking this information because it is highly relevant to the
17 action, it is under threat of imminent destruction due to finite data retention polices at ISPs and
18 Plaintiff's need for this information outweighs any prejudice to the responding party.

19       Courts in the Ninth Circuit have generally recognized a duty on their part to assist plaintiffs
20 in their quest for defendant's true identities. *See, e.g.*, *Wakefield v. Thompson*, 177 F.3d 1160, 1163
21 (9th Cir. 1999) (error to dismiss unnamed defendants given possibility that identity could be
22 ascertained through discovery) (citing *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)
23 ("[W]here the identity of the alleged defendants [is] not [ ] known prior to the filing of a complaint .
24 . . the plaintiff should be given an opportunity through discovery to identify the unknown
25 defendants.")). In fact, federal courts across the country routinely and virtually universally allow *ex*
26 *parte* discovery to identify unknown defendants. *See, e.g.*, *Donald v. Cook County Sheriff's Dept.*,
27 95 F.3d 548, 555 (7th Cir. 1996) ("To the extent the plaintiff faces barriers to determining the
28

1  identities of the unnamed defendants, the court must assist the plaintiff in conducting the necessary
2  investigation."); *see also id.* at 555 n.3 (collecting cases); *Dean v. Barber*, 951 F.2d 1210, 1215
3  (11th Cir. 1992) (finding error in district court's denial of a plaintiff's motion to join an unknown
4  defendant where identity of the defendant could have been determined through discovery); *Maclin v.*
5  *Paulson*, 627 F.2d 83, 87 (7th Cir. 1980) (reversing and remanding because when "a party is
6  ignorant of defendants' true identity . . . plaintiff should have been permitted to obtain their identity
7  through limited discovery") (citing *Owens v. Haas*, 601 F.2d 1242, 1247 (2d Cir. 1979); *Gordon v.*
8  *Leeke*, 574 F.2d 1147, 1152–53 (4th Cir. 1978)).  This is because the very purpose of discovery is to
9  make trial "less a game of blind man's bluff and more a fair contest with the basic issues and facts
10 disclosed to the fullest practicable extent possible." *United States v. Procter & Gamble*, 356 U.S.
11 677, 683 (1958).

12     **IV.     MOVANT SHOULD NOT BE ALLOWED TO PROCEED ANONYMOUSLY**

13     Movant argues he should be allowed anonymously because "[i]f his identity is disclosed in
14 this litigation, he will forever be linked to a highly embarrassing-and untrue-allegation. (Motion to
15 Proceed Anonymously at 1.) By bringing this motion, Movant improperly attempts to circumvent
16 the presumptive openness of judicial proceedings. Federal Rule of Civil Procedure 11 provides that
17 "[e]very pleading, written motion, and other paper must be signed" and "must state the signer's
18 address, e-mail address, and telephone number." Fed. R. Civ. P. 11. This rule is intended to
19 maintain the integrity of the system of federal practice and procedure, deter baseless filings, and
20 streamline the administration and procedure of federal courts. *Business Guides, Inc. v. Chromatic*
21 *Commc'ns Enters., Inc.*, 498 U.S. 533, 552 (1990); *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384,
22 393 (1990). "[P]arties to a lawsuit must typically openly identify themselves in their pleadings to
23 'protect[] the public's legitimate interest in knowing all of the facts involved, including the
24 identities of the parties.'" *United States v. Microsoft Corp.*, 56 F.3d 1448, 1463 (D.C. Cir. 1995)
25 (citing *Doe v. Frank*, 951 F.2d 320, 322 (11th Cir. 1992)); *see also Qualls v. Rumsfeld*, 228 F.R.D.
26 8, 10 (D.D.C. 2005). Even so, it is within the discretion of the district court to grant the "rare
27
28

dispensation" of anonymity. *Microsoft Corp.*, 56 F.3d at 1464 (quoting *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993)).

Anonymous litigation has been permitted where the issues are "matters of a sensitive and highly personal nature such as birth control, abortion, homosexuality or the welfare rights of illegitimate children or abandoned families." *Southern Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 712–13 (5th Cir. 1979). The district court has a duty to consider the impact of a party's anonymity on both the public interest in open proceedings and on fairness to the opposing party. *Microsoft Corp.*, 56 F.3d at 1464. In conducting this balance, the court must weigh a plaintiff's "privacy concerns against the presumption of openness of judicial proceedings." *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981). Factors for the court to consider include:

> (1) whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature;
> (2) whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties;
> (3) the ages of the persons whose privacy interests are sought to be protected;
> (4) whether the action is against a governmental or private party; and
> (5) the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

*James v. Jacobson*, 6 F.3d at 238. Doe Defendants in this case have no cognizable claim of privacy in their subscriber information. *See, e.g., MCGIP, LLC v. Does 1–18*, No. 11-1495, 2011 WL 2181620, at *1 (N.D. Cal. June 2, 2011) (Chen, J.) ("[I]t is difficult to say that Doe had a strong expectation of privacy because he or she either opened his or her computer to others through file sharing or allowed another person to do so.") Absent a compelling privacy interest, Movant should not be permitted to proceed anonymously. Moreover, it is improper to allow anonymous non-party Movants to raise—or even waive—the legal rights of Doe Defendants. At least two other federal courts came to the same conclusion and ordered John Does who filed pleadings to also file a notice indicating their identity by name, address, e-mail address, and telephone number. Order to Show

Cause 1–2, *Hard Drive Prods. v. Does 1–21*, No. 4:11-cv-59-SEB-WGH (S.D. Ind. July 27, 2011) (Barker, J.), ECF No. 22 ("[T]he Court cannot permit anonymous persons to litigate before it *pro se*."); Order Denying Implied Request to Proceed Anonymously 3, *Achte/Neunte Boll Kino Beteiligungs GMBH & CO. KG, v. Does 1–4,577*, No. 10-453 (RMC) (D.D.C., Sept. 16, 2010); *see also* Order 1, *Hard Drive Prods., Inc. v. Does 1–30*, No. 2:11-cv-345 (E.D. Va. Aug. 15, 2011), ECF No. 6 (ordering anonymous movant to provide clerk with his name, address, and telephone number). This Court should do the same, and deny John Does the ability to proceed anonymously.

## V. MOVANT'S MOTION MAY NOT BE BEFORE THE PROPER COURT

Movant did not reference an ISP or attach a subpoena in his motion. Many of the subpoenas in this case were issued from the Northern District of Illinois (i.e. plaintiff's subpoena processing center/place of production). Federal courts do not have statutory authority to quash or modify a subpoena issued from another district. Fed. R. Civ. P. 45(c)(3)(A); *In re Sealed Case*, 141 F.3d 337, 341 (D.C. Cir. 1998) ("[O]nly the issuing court has the power to act on its subpoenas . . . and nothing in the rules even hints that any other court may be given the power to quash or enforce them."); *see also IO Group v. J.W.*, No. C-10-05821, 2011 WL 237673, at *1 (N.D. Cal. Jan. 24, 2011) (Ryu) (citing *In re Sealed Case* in concluding the motion to quash fails because it was not filed in the proper court). Because Movant failed to provide any information that would allow the Court to determine whether the outstanding subpoena should be quashed or modified, this Court cannot determine whether it possesses the statutory authority to do so.

## CONCLUSION

The Court should deny Movant's motion. Movant's misjoinder arguments fail. Joinder is proper at this early stage of litigation. The exclusive remedy for misjoinder is severance, and not the quashing of a subpoena. Movant should not be allowed to proceed anonymously. Movant's motion may not be before the proper court.

///

///

///

Respectfully Submitted,

AF HOLDINGS LLC

**DATED: September 30, 2011**

By: \_\_\_\_/s/  Brett L. Gibbs, Esq._____

Brett L. Gibbs, Esq. (SBN 251000)
Steele Hansmeier PLLC.
38 Miller Avenue, #263
Mill Valley, CA 94941
blgibbs@wefightpiracy.com
*Attorney for Plaintiff*

14

PLAINTIFF'S RESPONSE TO MOVANT'S MOTION TO QUASH OR MODIFY SUBPOENA    No. C-11-03336 LHK

**Certificate of Service**

 **I hereby certify** that a true and correct copy of the foregoing was served via the Court's CM/ECF system on September 30, 2011 on all counsel or parties of record who are deemed to have consented to electronic service.

        /s/ Brett L. Gibbs, Esq.
         Brett L. Gibbs, Esq.